## WAND v. WAND.

A WIFE divorced from her husband for extreme cruelty on his part, is entitled to the custody of their female child of tender years, the wife being blameless. The father has a right to see the child at all convenient times.

APPEAL from the Sixth District.

*John Heard*, for Appellant.

Upon the dissolution of the marriage, the husband is no longer

the head of the family, and where the marriage is dissolved for his wrongful act, the wife (unless it be shown that the interests of the children require a different custodian,) is entitled to their society, care, and custody. (See Bishop on Marriage and Divorce, Secs. 643, 636, 641; *Bedell* v. *Bedell*, 1 Johns. Ch. 604; *Kingsbury* v. *Kingsbury*, 5 Har. Del. 8; *Codd* v. *Codd*, 2 Johns. Ch. 141; *Janes* v. *Janes*, 2 Har. Del. 142; *Clark* v. *Clark*, Wright, 225; *Hansford* v. *Hansford*, 10 Ala. 561; *Bascom* v. *Bascom*, Wright, 632; *People* v. *Mercein*, 8 Paige, 47; *Richmond* v. *Richmond*, 1 Greenl. Ch. 90; *Cook* v. *Cook*, 1 Barb. Ch. 639.)

Our statute, (Wood's Dig. 491, Sec. 7,) conferring power on the courts pending a suit for divorce, or at the final hearing, or afterwards, to make proper orders for the support of the wife and the support and education of the children, is substantially the same as the statutory provision in most of the States. In alluding to these statutes Mr. Bishop says, (Bishop on Marriage and Divorce, Sec. 634): "It is probably both the intent and the effect of every such statutory provision to abrogate, in cases to which it is applicable, any superior common law right the father may have over the mother to the custody of their mutual offspring." (See, to the same effect, *Ahrenfeldt* v. *Ahrenfeldt*, 1 Hoff. Ch. 497.)

*E. B. Crocker*, for Respondent.

*Prima facie*, the father is entitled to the custody of the children, even as against the mother. (Bish. on Marriage and Divorce, 633, citing numerous authorities.) Even where a divorce is granted on the ground of adultery, it does not follow, of course, that the guilty party is to lose the children; other circumstances may control. (Id. Sec. 637.)

When both parties are equally worthy, or equally unworthy, the father is entitled to the custody. (Id. Sec. 638; 3 Hill, 399, and opinion by Bronson, J. 421; see, also, *Graham* v. *Bennett*, 2 Cal. 509.)

The decisions in other States leave this subject very much to the discretion of the Chancellor; and as the District Judge has the parties and witnesses before him, his judgment upon a matter of such discretion ought not to be disturbed by this Court.

Again, those decisions which permit a Court to set aside the

rights of the father, are founded upon special statutory enact-ments which authorize the Court to make any proper order con-cerning the custody of the children in case of divorce. (Bish. on Marriage and Divorce, Sec. 634; *Ahrenfeldt* v. *Ahrenfeldt*, 1 Hoff. 497.)

But the statute of this State merely authorizes the Court to make such order for the maintenance and education of the child-ren, evidently leaving the question of custody to be determined by the principles of the common law, which fully recognizes the superiority of the father's claim.

*Heydenfeldt*, also, for Respondent, cited : *Mercein* v. *The People*, 25 Wend. 72; *King* v. *Bonnebelle*, 5 East, 221; *J. F. C.* v. *M. E.* 6 Rob. La. 135; *Com.* v. *Adicks*, 5 Binn. 520; Anonymous, 4 De-sau. 94, 102; Bishop, Secs. 639, 641; *The People* v. *Chegaray*, 18 Wend. 637; *The People* v. *Nickerson*, 19 Id. 16, and the cases there cited and reviewed.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

No questions arise in Courts of Justice more interesting or im-portant than those which affect the domestic relations of society. The happiness of the community is deeply concerned in the right establishment and just understanding of the rules which govern these relations. The record in this case involves the question, whether the father or the mother is entitled to the custody of an infant child, under the circumstances hereinafter stated.

The plaintiff brought her bill for a divorce, *a vinculo*, from her then husband, the defendant, upon the ground of extreme cruelty. This cruelty consisted, as averred and proved on the trial, in an attempt to kill her, by snapping a loaded pistol at her breast. This effort failing, he shot himself, inflicting a dan-gerous wound. This conduct seems to have been the result of jealousy, but we look in vain into the record for anything to justify it. There is no allegation in the answer, impeaching the fidelity of the plaintiff, nor is there anything in the proofs which even throws suspicion upon the purity of her conduct, apart from these acts of the defendant, which seem to have been un-

Wand v. Wand.

accompanied by explanation. The defendant appears to have been a man of peaceable general demeanor; and this act is charged as the sole deviation from a course of affectionate and becoming conduct in his marital relations. Nor is there anything in the record to show, as intimated before, improper conduct on the part of the wife; for the circumstances, as to which testimony has been given, are too trivial to merit any consideration.

The Judge below made a decree dissolving the marriage, and giving the custody of the child to the father. The child is an interesting girl of some six or seven years of age. The plaintiff, since the decree, has married—the defendant is single.

This appeal is taken from so much of the decree as fixes the custody of the child. Possibly, the plaintiff might have some difficulty in maintaining the decree of divorce upon the ground of extreme cruelty, founded upon this single act, under all the circumstances; although, as no appeal has been taken from that portion of the record, it is not necessary to consider the point, or intimate any opinion upon it.

The question of law raised by this statement is this: Is a husband, divorced from his wife, at her instance, for extreme cruelty, entitled to the custody of a female child of tender years—the conduct of the wife being without blame? This question has been discussed by the counsel with learning and ability.

It is not denied that the husband, as the head of the family, has the direction and control of the family, and of family affairs, and that his will and judgment are paramount to those of the wife, as well in respect to the custody of the children of the marriage, as to other things. But after the marriage has been dissolved, the question is different.

It is difficult to see upon what principle he is to be regarded as the superior, or as having superior rights, on the cessation of the matrimonial connection, to the other partner, now released from all marital obligations or obedience to him. Bishop on Marriage and Divorce, (Sec. 641,) uses this language: "If we were to look at this entire question of the custody of children in the light purely of legal principle, without either embarrassment or aid from specific adjudications, we should probably arrive at results substantially in accordance with the equity of those doc-

trines which we have already considered, as follows : That from parentage necessarily flow both the right and duty to educate and maintain the offspring; and from these flows, also, the right to their custody; that as between the parents, the law having placed the husband at the head of the family, and made his will paramount whenever he and the wife differ in judgment, and having likewise vested in him the property from which the children must be supported, it follows, of necessity, that he is entitled, in preference to her, to their custody also. Yet his superior claim could only be asserted in cases of conflict, and in circumstances where the will of both could not be regarded; for the natural rights of the mother are the same as those of the father, and can only be made to yield to the necessity of a controlling voice in questions of difference. In practice, such a conflict could seldom arise while the parents were living together. If they were apart, so that the children must be with one or the other of them, the mere fact of the suspension of the cohabitation could not, in this case, of consequent difference, shift the general right from the father, in whom it must remain as before; and this would be the result where there was a mutual separation by agreement, without any special wrong in either. But, if the separation were caused purely by the fault of one of them, as the husband, the other, as the wife, could not thereby be lawfully deprived of that society of her children, to which her act of giving them birth had entitled her equally with her husband; and her claim must prevail over his, as far as necessary to her enjoyment of her natural right unimpaired; and he could not complain of the consequences of his own misconduct." (Sec. 643.) " The rights, as between the parties, must be in subserviency to all superior rights and interests, and yield to them in cases of manifest conflict. Two other principles, therefore, should constantly control and modify the foregoing; first, that children are not born for the benefit of the parents alone, but for the country; and, therefore, that the interests of the public in their morals and education should be protected. Secondly, that the children, though younger in years, have themselves an interest, even more sacred than their parents, and more deserving of protection. Indeed, no parent has properly an *interest* in the mere *custody* of a child. With the parent it is a question of gratifica-

Wand *v.* Wand.

tion; with the child, one of the highest interest, involving his morals, education, all. And the interests of the community and of the child necessarily harmonize. Therefore, the good of the child should be the leading consideration; and this, it may be observed, will rarely require that he be placed beyond the control of both parents; for care that is prompted by the parental instinct, and responded to by filial affection, is the most valuable of all. But when the parents are separate, this consideration is balanced between the two; yet, the inferior parental rights of the one parent or the other exist. Upon principle, therefore, the rule would seem to be, that *prima facie*, after a separation, the father is entitled to the custody of the children, unless there be a divorce for his fault; in which case, the mother is entitled; yet, that this *prima facie* right must always be subject to the superior claims, that is, the good of the children. Considerations of this sort, while they cannot overturn a series of adjudged decisions, if found in conflict with them, may still serve to illumine doubt, and point the way where authorities are silent or inharmonious."

We have made citations at such length because the doctrine is clearly and concisely stated, and is decisive of this case.

The case of *Commonwealth* v. *Addicks & Wife*, (5 Bin. 520,) is a strong case for the Appellant—perhaps going too far. There, the father was divorced for adultery of the wife. The question was as to the custody of two young girls. The Court said:

" We are not bound to decide who is entitled to the guardianship or to deliver infants to the custody of any particular person. But we may in our discretion do so, if we think that, under the circumstances of the case, it ought to be done. For this we refer to the cases of *The King* v. *Smith*, (2 Stra. 982,) and *The King* v. *Dalaval*, (3 Burr, 1436.) The present case is attended with peculiar and unfortunate circumstances. We cannot avoid expressing our disapprobation of the mother's conduct, although, so far as regards her treatment of the children, she is in no fault. They appear to have been well taken care of in all respects. It is to them that our anxiety is principally directed; and it appears to us that, considering their tender age, they stand in need of that kind of assistance which can be afforded by none so well as a mother. It is on their account, therefore, that exercising

Wand *v.* Wand.

the discretion with which the law has invested us, we think it best at present not to take them from her. At the same time we desire it to be distinctly understood that the father is not to be prevented from seeing them. If he does not choose to go to the house of their mother she ought to send them to him when he desires it, taking it for granted that he will not wish to carry them abroad so much as to interfere with their education."

The numerous cases cited by Respondent's counsel, are cases where the marital union continued—under articles of separation or otherwise—and hence where the control of the husband given by that relation subsisted.

If we look to the interest of the child, which should be a leading, if not a paramount, consideration, the observations of Chief Justice Tilghman, above quoted, are too obviously true to require illustration. That a child of the tender age of this could be better cared for by the mother, with whom she could be almost constantly, than the father, whose necessary avocations would withdraw him, in a great measure, from personal superintendence and care of her, is plain enough. Indeed, if the dominion of the child should be given to the father, it is very evident that he must confide her person to some female to care for and keep her; and upon the person thus selected would depend, in a great degree, the happiness and welfare of the infant. We do not see why the mother should not, in the first instance, be intrusted with this office, for which she seems, upon every ground of humanity and natural right, to have the claim. For it does not at all follow that, in the present unhappy state of relations of these parties, the care or protection of the father is to be relinquished, or his parental duties or obligations destroyed. On the contrary, he has a right to be admitted to see the child at all convenient times when he may desire it. For the purpose of insuring him in the enjoyment of this right, he may have leave at any time to apply to the District Court for the necessary orders—for which the cause may be considered as open, so as to provide the necessary relief, if application be unhappily necessary. But it is to be hoped that this matter can be, as it should be, amicably settled by the parties so as to give the full benefit of parental protection and care to this child, and at the same time give to both parents the comfort of her society.

The Court reverses the decree below giving the custody of the child to the father, and orders that the child be restored to the mother; and that the cause be remanded to the District Court for such further proceedings as the parties may respectively be advised to take in accordance with the principles of this opinion.